IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| OVAL LEE MAY,<br><br>        Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>in her capacity as Acting Commissioner of the<br>Social Security Administration,<br><br>        Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br>Case No. 2:12-cv-00700-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Oval Lee May asks the Court[1] to reverse and remand the Social Security

Administration's final agency decision denying her Disability Insurance Benefits ("DIB") under

Title II of the Social Security Act.  The Administrative Law Judge ("ALJ") determined that Ms.

May did not meet the eligibility standards for benefits because she "was not under a disability

within the meaning of the Social Security Act from June 1, 2007, through the date last insured."

(ECF No. 5, the certified copy of the transcript of the entire record of the administrative

proceedings relating to Ms. May (hereafter "Tr. __") 20.)  Having carefully considered the

parties' memoranda and the complete record in this matter, this Court AFFIRMS the

Commissioner's decision that Ms. May does not qualify for Disability Insurance Benefits.

**FACTUAL AND PROCEDURAL HISTORY**

Ms. May was born on November 17, 1960.  (Tr. 181.)  Ms. May alleges she suffers from

depression and borderline intellectual functioning that renders her disabled.  (Tr. 9-13.)  She

alleges onset of her disability beginning June 1, 2007 (Tr. 42), and her date last insured is March

---

[1]  In accordance with 28 U.S.C. sections 636(c)(1) and (3) and Federal Rule of Civil Procedure
73, the parties have consented to proceed before the undersigned United States Magistrate Judge.

31, 2009.  (Tr. 181.)  On October 14, 2009, Ms. May protectively filed a Title II application for

DIB, which the Commission denied initially on January 22, 2010 (Tr. 72) and again upon

reconsideration, February 17, 2020.  (Tr. 76.)  Ms. May then filed a written request for a hearing

before an ALJ on February 25, 2010, which the Commission granted.  (Tr. 79.)  The ALJ held a

video hearing March 24, 2011 with Ms. May appearing in Salt Lake City, Utah.  (Tr. 20.)

At the hearing, Ms. May testified she had difficulties with her past jobs because she

became distracted easily, had problems remembering her duties, and worked slowly.  (Tr. 51–

52.)  She testified she currently worked twenty-four hours per week at Deseret Industries in its

clothing department and that she could do more hours of work per week if Deseret Industries

wanted.  (Tr. 43.)  Ms. May testified that she did not really have any problems doing the clothing

department work but that she would sometimes get "stressed out," about twice a week, and have

to ask her boss for a five to ten minute break.  (*Id*.)

At the hearing, vocational expert Connie Hill testified that Ms. May's past jobs

constituted unskilled jobs.  (Tr. 57–58.)  Assuming a person of Ms. May's age, education, work

experience, and reading, math, and other limitations, Ms. Hill testified that such a person could

perform other unskilled work as an industrial cleaner, cleaner 2, storage laborer, inspector and

hand packager, small products assembler, and gluer. (Tr. 58–60.)

The ALJ had before her medical evidence from multiple physicians who evaluated Ms.

May.  In 2004, Dr. John Okiishi, Ph. D., determined that Ms. May had an IQ score of 65 but

"displayed a level of adaptive functioning that is higher than was suggested by this score."  (Tr.

207.)  Following this exam, Dr. Okiishi diagnosed Ms. May with borderline intellectual

functioning.  (Tr. 208.)

Over the course of 2010, Dr. Steve Spencer treated Ms. May for complaints of anxiety and depression, and eventually found she generally appeared well and "in no distress." (Tr. 26, 303.) In 2010, Dr. Joan Zone, Ph.D., reviewed the record and found evidence of Mrs. May's depression but insufficient evidence to find a significant mental impairment. (Tr. 282–295.)

On April 4, 2011, the ALJ concluded Ms. May did not have a disability as defined in the Social Security Act because she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 22-23.) The ALJ also concluded that Ms. May had the residual functional capacity ("RFC") to perform a full range of work at all exertion levels with non-exertion limitations on reading and math skills at or below a third grade level (Tr. 25) and determined significant numbers of jobs existed in the national economy that Ms. May could perform. (Tr. 28.)

## STANDARD OF REVIEW

42 U.S.C. section 405(g) provides for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. §405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. § 405(g).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084.

"Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotations marks and citations omitted). Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's," *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted), but "review only the *sufficiency* of the evidence," *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). The court does not have to accept the Commissioner's findings mechanically, but will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson v. Sullivan*; 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## LEGAL STANDARDS

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation. *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750–53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520.  The claimant has the initial burden of establishing the disability in the first four steps.  *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy.  *Id.*

## ANALYSIS

In this case, the ALJ applied the five-step sequential disability evaluation and made the following findings of fact and conclusions of law with respect to Ms. May:

1. "[Ms. May] last met the insured status requirements of the Social Security Act on March 31, 2009."  (Tr. 22.)
2. "[Ms. May] did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2007, through her date last insured of March 31, 2009 . . . ."  (Tr. 22.)
3. "Through the date last insured, [Ms. May] had the following severe impairments: depression and borderline intellectual functioning . . . ."  (Tr. 22.)
4. "Through the date last insured, [Ms. May] did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ."  (Tr. 23.)
5. Further, "[Ms. May] had the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: her reading and math skills were at a third grade level or below.  Her work was restricted to simple, unskilled work, with an SVP of 1 or 2, t hat required only minimal interaction with co-workers, and brief and superficial contact with the general public.  The work must have been low stress and must not have involved significant changes or adaptations, and must not have required meeting production quotas such as on an assembly or production line."  (Tr. 25.)
6. "Through the date last insured, [Ms. May] was unable to perform any past relevant work."  (Tr. 28.)
7. "[C]onsidering [Ms. May's] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that Ms. May could have performed."  (Tr. 28.)

In short, the ALJ found that Ms. May did not engage in substantial gainful activity since her alleged onset date because of severe mental impairments.  (Tr. 22.)  Despite those

impairments, the ALJ found Ms. May could still perform a full range of work at all exertion levels and therefore did not qualify for DIB. (Tr. 25-28.)

In support of her claim for reversal of the Commissioner's decision, Ms. May argues: (1) the ALJ erred in finding that she does not meet or equal a listing; (2) the ALJ failed to ascribe a weight to the opinion of Dr. Spencer, Ms. May's treating physician; (3) the ALJ improperly investigated evidence outside of the exhibits and hearing and then mis-interpreted said evidence; and (4) the ALJ did not include all limitations in determining Ms. May's functional capacity, but would have deemed Ms. May "disabled" had she included all such limits. (Pl.'s Opening Br. 6, 12, 14, 16, ECF No. 16.) The Court addresses each argument in turn.

### I.      Classification of the Plaintiff's Impairments at Step Three

First, Ms. May argues the ALJ erred at step three of the sequential evaluation process by finding that she did not meet listing 12.05 under 20 CFR Part 404, Subpart P, Appendix 1. Ms. May contends that she satisfies 12.05 and that the ALJ's finding constitutes legal error because (1) the opinion fails to give adequate reasons for the conclusion; (2) the opinion fails to explain adequately why the ALJ rejected evidence supporting a finding of disability; and (3) substantial evidence does not support the conclusion. (Pl.'s Opening Br. 7, ECF No. 16.)

Step three of the sequential evaluation process asks whether any "medically severe impairment," alone or in combination with other impairments, meets or equals any of a number of listed impairments so severe as to preclude "substantial gainful employment." 20 CFR §§ 404.1525-404.1526 & pt. 404, subpt. P, App. 1. If the claimant's impairment(s) meet or equal the listing, the ALJ must find the impairment conclusively disabling. *See id.* § 404.1520(d). If the impairment(s) does not meet or equal the listing, the claimant must establish at step four that

her impairment prevents her from performing work she previously performed. *See id.* §

404.1520(e), (f).

To satisfy the 12.05 listing, a claimant must show "significantly subaverage general

intellectual functioning with deficits in adaptive functioning initially manifested during the

developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before

age 22." 20 C.F.R. § 404, subpt. P, app. 1, § 12.05. To meet the required level of severity for

the disorder, a claimant must meet one of four sub-requirements. Ms. May argues that she meets

Listing 12.05 part C, which requires a "valid verbal, performance, or full scale IQ of 60 through

70 and a physical or other mental impairment imposing an additional and significant work-

related limitation of function." 20 C.F.R. § 404 app. 1.

The ALJ determined Ms. May "does not meeting listing 12.05 because she does not meet

the threshold requirement that her intellectual functioning deficits were initially manifested

before the age of 22." (Tr. 25.) While acknowledging Ms. May had an IQ score in the requisite

range of the 12.05C requirement, the ALJ found Ms. May failed to meet the 12.05 listing

because she failed to prove her intellectual functioning deficits manifested themselves before age

twenty-two. (Tr. 25.) The Third Circuit in *Gist v. Barnhart*, 67 F. App'x 78, 82 (3d Cir. 2003),

upheld an ALJ's finding that a claimant did not meet the 12.05 listing because she provided no

documentary or other evidence to substantiate her testimony that she placed in to special

education in high school. In *Barnes v. Barnhart*, 116 F. App'x 934, 936-7 (10th Cir. 2004), the

Tenth Circuit found the claimant *did* meet the 12.05 listing because she had taken an IQ test at

age twenty-one, thus her IQ of seventy, established by age twenty-one, met the first prong of the

12.05 listing.

Here, the ALJ found Ms. May's reports of being in special education in high school insufficient to document that her deficits began before the age of twenty-two. (Tr. 25.) The ALJ also noted that the record contains no cognitive testing from before the age of twenty-two to support Ms. May's contention of onset before that age. (Tr. 25.) Ms. May cites to portions of the record other than her testimony as support for her deficit beginning before the age of twenty-two. (Pl.'s Opening Br. 7-8 (citing Tr. 167-68, 172, 193, 204).) However, these citations reflect only self-report or a finding well after Ms. May turned twenty-two. (Tr. 167-68, 172, 193, 204.) The burden at step three lies with the plaintiff. *Ray*, 865 F.2d at 224. As other courts have found, absent documentary evidence of a deficit prior to the age of twenty-two, the ALJ may find plaintiff's testimony of participation in special education insufficient to support a finding of meeting listing 12.05. *Gist*, 67 F. App'x at 82. Thus, this Court finds that, based on the record before it, the ALJ did not err in making its findings on this point.

## II.    Evaluation of Treating Physician Opinion Evidence

Second, Ms. May argues the ALJ failed to indicate what weight the ALJ gave to the opinions of the various physicians and others who examined Ms. May. The record before the Court does not support this assertion.

An ALJ must evaluate every medical opinion. 20 C.F.R. § 404.1527(c). An ALJ must give a treating physician's opinion controlling weight if the ALJ finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). When deciding whether to give a treating physician's opinion controlling weight, the ALJ must consider certain factors. 20 C.F.R. section 404.1527(c) provides these factors:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*See Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003) (citation omitted). To reject a medical opinion, the ALJ must provide "specific, legitimate reasons" for doing so. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quoting *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996)).

Yet the ALJ's decision need not *discuss explicitly* all of the factors for each of the medical opinions. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that a lack of discussion of each factor does not prevent the court from according the decision meaningful review). When considering medical opinion evidence, the ALJ must weigh and resolve evidentiary conflicts and inconsistencies. *See, e.g.*, *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (reflecting ALJ's resolution of evidentiary conflicts between medical providers).

Here, the ALJ did not attribute controlling weight to Ms. May's treating medical provider's opinion and found that Ms. May had the residual functional capacity to perform a full range of work at all exertion levels with non-exertion related (mental) limitations. (*See* Tr. 25- 26.) The ALJ's discussion provided specific, legitimate reasons for granting Dr. Spencer "little weight." (Tr. 26.) Namely, the ALJ noted Dr. Spencer is not a psychologist and did not support his opinion with clinical notes nor provide any rationale for his ratings of Ms. May. (Tr. 26.)[2]

---

[2] The ALJ's refusal to give great weight in the absence of notes or rationale accords with the instruction of 20 C.F.R. § 404.1527(c)(3), which explains: "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the

Moreover, the ALJ noted Dr. Spencer treated Ms. May "very conservatively", did not make changes to her medications over time, and recommended therapy only once. (Tr. 26.) Dr. Spencer also opined that Ms. May could not perform many tasks between five percent and ten percent of the time during an eight-hour work day without having examined or interviewed Ms. May to find out information on which to base this decision. (Tr. 26.) In addition, Ms. May's daily activities – including her ability to care for her personal needs, do house and yard work, care for her children, and work at Deseret Industries – supported the ALJ's decision. (Tr. 23, 27; *see, e.g., Castellano v. Sec. of H.H.S.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (claimant's daily activities provided a reason for rejecting treating physician's opinion and for finding the claimant not fully credible).)

The ALJ's decision[3] shows she did consider the opinion of Ms. May's treating physician, Dr. Spencer, in determining Ms. May's RFC and that she did ascribe a weight to his and other physician opinions she considered. (*See* Tr. 26-27.)

### III. Improper Consultation of Outside Evidence

Third, Ms. May argues that the ALJ improperly investigated evidence outside of the exhibits and hearing and then mis-interpreted that evidence. The Court agrees that the ALJ inappropriately consulted outside evidence. Nonetheless, the Court finds this error harmless

---

more weight we will give that opinion. The better explanation a source provides for an opinion, the more weight we will give that opinion."

[3] Ms. May also asserts the ALJ failed to ascribe a weight to any consultative examiners or State agency physicians (Pl. Opening Br. 13, ECF 16) and specifically claims "[t]he ALJ did not address Dr. Okiishi weight of evidence [sic]." (Pl. Reply Mem. 5, ECF No. 20.) This assertion, again, mischaracterizes the ALJ's decision: the ALJ gave "little weight" to state agency consultants Joan Zone and Vilma Helmer because neither examined or interviewed Ms. May in reaching the conclusion that insufficient evidence existed to determine if Ms. May had a severe mental impairment. (Tr. 27.) The ALJ gave "moderate weight" to Dr. Okiishi's psychological evaluation of Ms. May based upon his interview and testing of Ms. May. (Tr. 26.)

because it does not affect the overall ruling that Ms. May does not qualify for DIB. A harmless error is one "minor enough not to undermine confidence in the determination of th[e] case." *Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993).

Ms. May asserts that the ALJ misinterpreted the outside evidence, yet fails to explain what the ALJ utilized the outside evidence to determine differently from what she concludes based directly on the hearing and record. (Pl.'s Opening Br. 15-16, ECF No. 16.)

The ALJ noted Ms. May's attorney had characterized Deseret Industries ("DI") as a "sheltered work environment." (Tr. 27.) Based upon the website, however, she found that DI's goal of helping individuals learn to become competent employees, in combination with the fact that Ms. May worked at DI, suggested Ms. May has the capacity to work. (Tr. 27.) In her testimony, Ms. May said she worked at DI where she received training so she could "get back on her feet." (Tr. 42-43.) Ms. May also explained that DI provided her with classes to improve her basic skills in spelling, math, and writing. (Tr. 44.) As the Commissioner points out, the ALJ concluded from the website that DI helps its employees "learn successful work skills, and provides career and technical education by offering training courses." (Tr. 27) But Ms. May herself testified DI provided "a training place where they try to help people get on their feet" and "sen[t her] to school" for math and reading. (Tr. 42-44.) Thus, the outside evidence does not contradict or expand on the testimony in the record. Hence, the ALJ did not base her decision on anything beyond the scope of what Ms. May herself had testified to at the hearing.

Because the ALJ had substantial evidence on which to base her RFC determination as discussed below, and because the internet search does not add to or deviate from the hearing testimony, this Court finds the ALJ's consultation and citation of the Deseret Industries website constitutes harmless error that did not affect the case outcome.

### IV.      RFC Determination and Ability to Perform Past Work

Finally, Ms. May argues the ALJ erred in finding Ms. May not disabled and, rather, able to perform the full range of unskilled work. Ms. May asserts that, had the ALJ included and properly applied all of her limitations, the ALJ would have found Ms. May "disabled."

The RFC reflects the ability to do physical, mental, and other work activities on a sustained basis despite limitations from the claimant's impairments. *See* C.F.R. §§ 404.1545, 416.945. The step four analysis involves three phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003)(citation omitted). Ms. May argues the ALJ erred in assessing her RFC by not including all limitations in determining her functional capacity and by failing to consider the opinion of treating physician Dr. Spencer. The Court disagrees.

At phase one of step four, the ALJ found that Ms. May had depression and borderline intellectual functioning, impairments that impose more than minimal restrictions on her ability to perform basic work activities which therefore qualify as "severe" mental impairments. (Tr. 22.) Here the ALJ noted that she gave "little weight" to Susan Riding's opinion that Ms. May had third grade math and reading abilities because Ms. Riding had not formally tested Ms. May, and the record failed to disclose how long or in what capacity Ms. Riding had known Ms. May. (Tr. 27.) Further, based on medical evidence and Ms. May's own testimony at the hearing stating that she did not have any physical impairment, the ALJ determined she had only "non-severe" physical ailments. (Tr. 22.)

At phase two of step four, the ALJ found Ms. May's "past relevant work illustrates her ability to perform unskilled work." (Tr. 29.) As the ALJ also noted, unskilled work generally involved "working with things (rather than with data or people) and in such work functions at the unskilled level, literacy has the least significance." (Tr. 29.) Moreover, the ALJ noted Ms. May's "anxiety and depression were present and pharmalogically treated as early as 2005, yet [Ms. May] worked until 2007." (Tr. 27.) Because the record indicates no change in Ms. May's mental condition, the ALJ found this history, further, suggested Ms. May's ability to continue to work. (Tr. 27.)

In the final phase of step four, the ALJ found that, despite her mental impairments and based in part on the testimony of vocational expert Ms. Hill, Ms. May stood "capable of making a successful adjustment to other work that existed in significant numbers in the national economy" through the last date insured. (Tr. 30.) The ALJ based this conclusion also upon Ms. May's age, education, work experience, and RFC.

At step four, again, Ms. May argues that the ALJ gave insufficient weight to the opinion of her treating physician. The Court has already addressed this argument in part above and found it lacks merit. Substantial evidence supports the ALJ's decision to grant little weight to Dr. Spencer's testimony. In addition to finding that Ms. May suffered from some severe mental impairments, the ALJ considered all of Ms. May's symptoms in determining Ms. May's RFC and in arriving at the conclusion that, despite her mental impairments, Ms. May could meet the demands of the unskilled work described in phase two of step four. The Court agrees.

## CONCLUSION

Based on the foregoing, the Court finds that substantial evidence supports the

Commissioner's decision and AFFIRMS the Commissioner's decision in this case.

DATED this 19th  day of December, 2013.

BY THE COURT:

_____

Evelyn J. Furse

United States Magistrate Judge